UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| FREDDIE M. GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. 10-81-GFVT |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| PHILLIP J. BURNETT, | ) | **&** |
| Individual Capacity, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On April 4, 2009, Lieutenant Philip J. Burnett of the Kentucky State Police arrested Freddie Gregory for menacing.  Gregory believes that Lt. Burnett's actions, from the initial stop to the arrest, are in contravention of his Constitutional rights and caused injuries recognized under Kentucky law.  Lt. Burnett believes that whatever the facts, they fail to support such sweeping claims.  The Court agrees.  For the reasons that follow, Lt. Burnett's Motion for Summary Judgment [R. 20, 38] will be GRANTED.

**I**

Gregory was sitting in his pickup truck on Fred Gregory Road preparing to pull out onto Levi Branch Road.  Before he did so, Gregory noticed to his left, approximately 65 feet away, a police car stopped in the middle of Levi Branch Road.  Because of alleged previous encounters with Lt. Burnett, Gregory suspected that he was driving the police car.  Gregory was correct.  Lt. Burnett motioned for Gregory to pull out onto Levi Branch Road.  Rather than comply with Lt. Burnett's gesture, Gregory remained in place and with a wave of his hand insisted that Lt. Burnett pass him.  Lt. Burnett did not; he

decided instead, to pull up alongside of Gregory.  He then exited his vehicle, approached Gregory's driver's side window, and asked him for his driver's license.  While reaching for it, Gregory pointed at Lt. Burnett and complained that he was tired of being harassed by the officer.  Lt. Burnett opened the truck door, pointed back at Gregory, and warned that if Gregory continued to point at him, he would take him to jail.

While outside of the truck, Gregory gave his driver's license to Lt. Burnett, but persisted in his complaints about being harassed.  Lt. Burnett countered that Gregory was stopped because the tint of his windows was too dark and that he was not wearing his seatbelt.  Gregory then quipped that Lt. Burnett's shades were tinted too darkly causing him not to see as well.  Lt. Burnett then informed Gregory that he was arresting him for menacing, searched him, then placed him in the back of his police car, and searched his truck.  Subsequently, Lt. Burnett charged Gregory with disorderly conduct and failure to wear a seatbelt.

From there, Gregory was taken to jail where he spent approximately three hours before his release and was charged $45 in jail fees.  Lt. Burnett prepared a police report that was subsequently relied on by Bell County Attorney Neil Ward to prosecute Gregory.  Prior to the incident on April 4, Gregory installed a video camera in his truck, with the intended purpose of using it to record any interactions with Lt. Burnett.  County Attorney Ward reviewed this tape, and eventually, the charges against Gregory were dismissed without prejudice by way of an Agreed Order entered October 16, 2009.

Gregory filed the instant complaint on March 22, 2010 pursuant to 42 U.S.C. § 1983. [R. 1.] Count 1 alleges a federal claim for First Amendment Retaliation.  Count 2 alleges a federal claim for unlawful stop in violation of his Fourth and Fourteenth

Amendment rights.  Count 3 alleges a federal claim for unlawful arrest in violation of the

Fourth and Fourteenth Amendments.  Count 4 asserts a federal claim for malicious

prosecution based on the Fourth and Fourteenth Amendments.  Counts 5 through 7 allege

state law claims for negligence, gross negligence, and negligent infliction of emotional

distress.  Counts 8 and 9 allege claims based on state law for intentional infliction of

emotional distress and malicious prosecution.[1]

## II

## A

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be

granted "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  "A genuine dispute exists on a material fact,

and thus summary judgment is improper, if the evidence shows 'that a reasonable jury

could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President

of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must

be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477

U.S. at 252.  In reviewing a motion for summary judgment, the court "must construe the

evidence and draw all reasonable inferences in favor of the nonmoving party."  *Browning*

---

[1] Review of Gregory's claims will not include consideration of any Fourteenth Amendment violations.
Gregory's claims are premised in an unlawful stop and seizure.  Such claims are not cognizable under a due
process theory.  *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (allegation of civil rights violations
sounding in pretrial deprivations of liberty must be asserted under the Fourth Amendment).  Moreover, "[a]
malicious prosecution claim is not available under the Fourteenth Amendment."  *Jolley v. Harvell*, 254
Fed.App'x. 483, 490 (6th Cir. 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994) (plurality
opinion)).

*v. Dept. of Army*, 436 F.3d 692, 695 (6ᵗʰ Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Id.* (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citing *Anderson*, 477 U.S. at 251-52).

**B**

Before the Court undertakes a substantive analysis of the issues raised in Lt. Burnett's motion, it is important to note that in a prior ruling he was dismissed from this action in his official capacity.[2]   To quote from that ruling, "[b]ecause states cannot be sued under § 1983 for monetary damamges, neither can state officers in their official capacities."  [R. 17 (*citing Edelman v.* Jordan, 415 U.S. 651, 663 (1974).]  Thus, Lt. Burnett was dismissed in his official capacity.  [*See id.*]

At this juncture, the claims asserted by Gregory only persist against Lt. Burnett in his individual capacity.  As previously mentioned, there are nine claims asserted by Gregory.  Lt. Burnett opposes those claims on substantive grounds and on the basis that he is entitled to qualified immunity on the federal claims and qualified official immunity on the state claims.  Lt. Burnett pled qualified immunity as an affirmative defense in his answer.  [R. 7 at 8.]  In the § 1983 context, Supreme Court precedent explains that a government official can only be personally liable if he "caused the deprivation of a right." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  To defend against allegations that her or she caused such deprivation, the official may assert "personal immunity defenses such as objectively reasonable reliance on existing law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating claims of

---

[2] By agreed order, the Department of Kentucky State Police was dismissed from this action on April 14, 2010.  [R. 9.]

qualified immunity, courts generally apply a two-step analysis. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was the right at issue "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Qualified immunity analysis for federal claims is "essentially identical to the qualified immunity inquiry under [Kentucky] state law." *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004); *see also Yanero v. Davis*, 65 S.W.3d 510, 521-23 (Ky. 2001).

**1**

The first claim addressed here is Gregory's unlawful *Terry* stop claim. Gregory asserts that his Fourth Amendment rights were violated when Lt. Burnett stopped him without articulable facts supporting reasonable suspicion. [R. 1, at 8.] Lt. Burnett argues that his initial interaction with Lt. Burnett was without any show of force, and thus no violation of Lt. Burnett's constitutional rights occurred. [R. 20, at 7.] Specifically, he

asserts that review of the video and deposition testimony shows that Lt. Burnett's initial approach to Gregory's vehicle was not accompanied by any show of authority. [*Id.*] Alternatively, he argues that he had reasonable suspicion to approach Gregory's truck because he was stopped on a public roadway, marked with a county road sign, in actual physical control of a motor vehicle without wearing a safety belt. [*Id.* at 8.] The Court has reviewed the deposition testimony and the video, and concludes that notwithstanding viewing the facts in a light most favorable to Gregory, summary judgment as to this claim is appropriate.

In the Fourth Amendment context, " 'there are three types of permissible encounters between the police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause.' " *United States v. Carr*, 355 Fed.App'x. 943, 945 (6th Cir. 2009) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994); *United States v. Ushery*, 968 F.2d 575, 579 (6th Cir. 1992); *United States v. Flowers*, 909 F.2d 145, 147 (6th Cir. 1990)).

Consensual encounters do not induce Fourth Amendment scrutiny because there is no "physical force or show of authority." *See Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968); *see also United States v. Drayton*, 536 U.S. 194, 203-04 (2002). An officer's objective behavior determines whether an encounter is consensual. *Mitchell v. United States*, 233 Fed.App'x. 547, 550 (6th Cir. 2007). Moreover, " '[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures

merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.' " *Id.* (quoting *Drayton*, 536 U.S. 194, 200 (2002)).

The Sixth Circuit recognized in *United States v. Waldon,* 206 F.3d 597 (6th Cir.2000), that "law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." 206 F.3d at 603; *see also Mitchell v. United States*, 233 F. App'x 547, 549-50 (6th Cir. 2007). Lastly, a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980).

The Court finds that Lt. Burnett's initial interaction with Gregory did not constitute a stop for purposes of the Fourth Amendment because there was no show of force or authority exhibited by the officer. In his deposition, Lt. Burnett describes stopping his patrol vehicle, and motioning for Gregory to pull out onto Levi Branch Road, so that he could continue driving. [*Id.*] Lt. Burnett does not believe that his hand gesture should cause a reasonable person to think he or she was not free to leave. [*Id.*] Moreover, he asserts that he did not even have his blue lights activated. [*Id.*]

Review of Gregory's deposition testimony supports Lt. Burnett's argument. According to Gregory, Lt. Burnett's police car was approximately 65 feet away from Gregory, and Gregory Lane, when Lt. Burnett motioned for him to turn onto Levi Branch Road. [R. 24, at 7.] The reason Gregory demurred was because of previous encounters

with Lt. Burnett.  Lt. Burnett explained that previous encounters with Lt. Burnett had left

him skeptical as to Lt. Burnett's true intentions.  He surmised that Lt. Burnett only

wanted him to continue driving so that he could pull him over and harass him.  [*Id.*]

Gregory's sensitivities, however, are not germane to this analysis.  *See Michigan v.*

*Chesternut*, 486 U.S. 567, 574 (1988) ("This 'reasonable person' standard . . . ensures

that the scope of Fourth Amendment protection does not vary with the state of mind of

the particular individual being approached.").  Therefore, based on the teachings in this

Circuit, the initial interaction between Lt. Burnett and Gregory was not a violation of his

Fourth Amendment right to be free of an unreasonable seizure.

  Still, there was a point at which the encounter between Lt. Burnett and Gregory

turned into a seizure for purposes of the Fourth Amendment.  By the time Lt. Burnett

drove his patrol vehicle alongside Gregory's truck, and exited his vehicle, with the intent

to approach Gregory, an objective view of the facts supports finding that some show of

force was exhibited.

  The facts here do not reflect a traditional "traffic stop."  Normally, after a brief

pursuit of a vehicle driven by a citizen, a law enforcement official will utilize his or her

siren and lights to indicate that he or she wants the person in that vehicle to pull off the

highway or road.  *See U.S. v. Elmore*, 692 F.Supp.2d 915, 931 (E.D. Tenn. 2010).

  Here, Lt. Burnett did not activate his emergency equipment, and he did not need

to motion for Gregory to pull over because Gregory was already stopped and did not in

any way indicate that he intended to drive away.  However, "in view of all the

circumstances surrounding the incident, a reasonable person would have believed that he

was not free to leave," especially once Lt. Burnett got out of his patrol car, and approached Gregory's truck. *See Mendenhall*, 446 U.S. at 554.

Despite this finding, Lt. Burnett asserts that he still had a reasonable suspicion to conduct the investigative stop. Specifically, he claims that he observed that Gregory was sitting in his vehicle, in the middle of a roadway, marked with a county road sign, in actual physical control of a vehicle without wearing a seatbelt. [R. 20, at 8.]

The seizure of a person that occurs during an investigative stop of a vehicle comports with the Fourth Amendment only if the police have a reasonable suspicion that "criminal activity may be afoot" to justify the stop. *Terry,* 392 U.S. at 30. A police officer's suspicion that criminal activity may be afoot is reasonable and thus justifies an investigative stop only when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion upon the stopped person's privacy. *Id.* at 21.

According to the teaching of this Circuit, "reasonable suspicion of an ongoing misdemeanor is adequate justification" for an investigatory stop. *United States v. Simpson*, 520 F.3d 531, 540 (6th Cir. 2008). Moreover, the Supreme Court has flatly rejected any notion "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996).

Here, Lt. Burnett claims that he observed Gregory violating KRS 189.125(6). It states, in relevant part, that "a person shall not operate a motor vehicle manufactured after 1981 on the public roadways of this state unless the driver and all passengers are wearing

a properly adjusted fastened seat belt…"  An "operator," according to KRS 189.010(7), is the "person in actual physical control of a vehicle."

Based on the record, Lt. Burnett had reasonable suspicion to effectuate the traffic stop.  Lt. Burnett contends that upon making his initial stop on Levi Branch Road, after motioning for Gregory to proceed onto Levi Branch Road, he noticed that Gregory did not have his seatbelt on.  [R. 25, at 26.]  Only after determining that Gregory did not have his seat belt on did Lt. Burnett drive up along side of him and park.  Gregory has provided no evidence to refute this claim,[3] and in fact his deposition testimony substantiates Lt. Burnett's recollection of the events.  Gregory testified that while Lt. Burnett was still 65 feet away, he took his seatbelt off to turn on his video camera.  [R. 24, at 17.]  His testimony is consistent with what was expressed by Lt. Burnett.  Furthermore, the video submitted by Gregory shows him sitting in his truck without wearing a seatbelt.  Accordingly, the Court finds that Lt. Burnett had reasonable suspicion for the investigatory stop.  Summary judgment is appropriate as to the unlawful stop claim listed under Count 2.

**2**

Concerning the federal claims for First Amendment Retaliation and unlawful arrest, Gregory asserts that he was arrested because he professed his innocence and complained that he was tired of being harassed.  [R. 1, at 6.]  To state it plainly, Gregory believes he was arrested in retaliation for exercising his First Amendment right to free

---

[3] Counsel for Gregory submits that Lt. Burnett after being shown the measurements of the distance between his initial stop and Gregory's truck and the photographs of the same agreed that "it would have been impossible for him to see whether [] Gregory was wearing a seatbelt." [R. 39, at 22.] Careful review, however, of the portion of Lt. Burnett's testimony proffered by Gregory does not support the proposition that he agreed with counsel's representation.  Rather, Lt. Burnett explained that the photographs did not represent the conditions of the day on which the incident occurred.  [R. 25, at 16.]

speech.  Lt. Burnett argues that he had probable cause to arrest Gregory for menacing and the offenses for which he was subsequently charged.  [R. 20, at 9.]  Gregory bears the burden for proving that Lt. Burnett lacked probable cause.  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). Because he has not submitted significant probative evidence in support of his opposition to this motion, summary judgment as to these claims will also be granted.

To state a First Amendment retaliation claim, Gregory must show: "(1) [she] engaged in protected conduct; (2) [she] suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the protected conduct." *Smith v. Craven*, 61 F. App'x 159, 161 (6th Cir. 2003) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  "A motivating factor is essentially a but-for cause—'without which the action being challenged simply would not have been taken.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir. 2002)).

In 2006, this Circuit held that *Hartman v. Moore*, 547 U.S. 250 (2006), a Supreme Court opinion, added a fourth element to this analysis, requiring a plaintiff alleging a retaliatory arrest to show that the defendant officer also lacked probable cause. *See Barnes v. Wright*, 449 F.3d 7-9, 720 (2006).  In 2012, after realizing that *Hartman* had lead to a split in the circuits regarding whether proving a lack of probable cause was necessary to establish a claim for retaliatory arrest, the Supreme Court, in *Reichle v. Howards*, 132 S.Ct. 2088 (2012), held that it "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause."  132 S.Ct. at

2093.  The Supreme Court also held that at the time of the respondent's arrest, "it was not clearly established that an arrest supported by probable cause could violate the First Amendment."  *Id.* at 2092.

The *Howards*' decision will have a profound impact on this matter if this Court finds that Lt. Burnett had probable cause to arrest Gregory because a claim for First Amendment retaliation where the arrest was supported by probable cause was not clearly established, and consequently, under the qualified immunity framework, Lt. Burnett would not have been able to "reasonably . . . anticipate when [his] conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Additionally, probable cause is determined by "whether at [the moment of arrest] the facts and circumstances within [law enforcement officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Lt. Burnett arrested Gregory for menacing, and eventually elected to charge Gregory with disorderly conduct in the second degree and failure to wear a seatbelt.  To establish probable cause for the arrest, Lt. Burnett need not prove that he had probable cause for the crime of menacing.  Rather, for purposes of this analysis he need only show probable cause for one of the offenses.  *See Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997) (affirming the Fifth Circuit's rationale in *Gassner v. Garland*, 864 F.2d 394, 398 (5th Cir. 1989), that "[a] police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest; rather, the question is whether the conduct that served as the basis for the charge for which there was no

13

probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause") (internal quotations omitted)).  Given this standard, the Court will first determine whether there was probable cause to arrest for the seatbelt violation.

KRS 189.125(6) provides, in relevant part that "[a] person shall not operate a motor vehicle manufactured after 1981 on the public roadways of this state unless the driver and all passengers are wearing a properly adjusted and fastened seat belt…."  At the time of the stop, Gregory was operating a truck.  Moreover, Gregory has admitted and the video confirms that he was not wearing his seatbelt at the time of the stop.  The only disputes relate to whether Gregory was on a public roadway and whether an arrest is appropriate for violation of Kentucky's seatbelt statute.  Based on the evidence before the Court, both questions are answered in the affirmative.

Gregory asserts that while stopped on Gregory Road he was on his driveway instead of a public roadway.  [R. 24, at 30.]  To refute this claim, Lt. Burnett proffers the deposition testimony of Bruce Nunn, Bell County Fiscal Court Road Superintendent.  He testified that Gregory Road is a County road.  [R. 21-5, at 3.]  Specifically, Nunn stated that the county constructed the bridge, and paved the portion of the road on which Lt. Burnett stopped Gregory.  He even identified the County Road number associated with Gregory Road, 1333M.  Although Gregory resists this characterization, he has not identified or proffered any evidence in the record to dispute this claim.  Consequently there is no genuine issue of fact as to the designation of Gregory Road as a public road. [4]

---

[4] Gregory testifies to the contents of a property deed for the property on which he resides.  After some prompting by his counsel, he asserts that the County does not have any easements on the property.  The obvious inference to be drawn here is that the County cannot claim ownership of the road because it does not have a legal right to be on the property, and therefore there was not probable cause for the arrest

With respect to the appropriateness of the arrest, the Court finds that although Kentucky may prohibit arrests based on seatbelt violations, the protections afforded to a citizen of a state are not implicated in Fourth Amendment analysis.  In his brief, "Lt. Burnett acknowledges that violation of KRS 189.125 is not an offense that an officer normally would effect a custodial arrest for by itself under Kentucky law."  [R. 20, at 11.] Review of the pertinent KRS provisions confirms Lt. Burnett's assertion.  Pursuant to KRS 189.125, noncompliance with the seatbelt requirement is considered a violation. *See* KRS 189.125(6), (7).  Consequently, "[a] peace officer may issue a citation instead of making an arrest for a violation committed in his or her presence but may not make a physical arrest unless there are reasonable grounds to believe that the defendant . . . will not appear at the designated time."  KRS 431.015.

Based on the quoted provisions, the correct course of action for Lt. Burnett to pursue as it relates to the seatbelt violation would have been to hand Gregory a citation for his infraction.  Gregory would have then been required to pay a fine.  *See* KRS 189.990(26) (providing that "[a]ny person who violates the provisions of KRS 189.125(6) shall be fined an amount not to exceed twenty-five dollars ($25).").

Despite Lt. Burnett's error, it is not fatal to this Fourth Amendment analysis.  The Constitution is not violated and § 1983 does not contemplate the existence of claims based on the premise that state law does not allow for a custodial arrest.  The Sixth

---

because Gregory was not on public property pursuant to KRS 189.125(6).  Despite general skepticism about the County's need to have an easement before it can claim that a road is a county road, Gregory has neither developed this argument nor raised this as a disputed issue in his response.  Therefore, the Court sees no reason to engage in this inquiry when the record convincingly establishes that Gregory Road is a county road.  *See* Fed.R.Civ.P 56(e); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-05 & n. 5 (6th Cir. 1992); *see also Elite Aesthetic Solution Inc. v. Standard Capital Corp.*, (E.D. Ky. June 1, 2005) (where this Court explained "[w]here a non-movant responds, but does not raise an issue of fact regarding the issues properly supported in the motion for summary judgment, summary judgment may be granted in the movant's favor.").

15

Circuit has held that "[w]hile states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under § 1983." *Conley v. Williams*, No. 93-5523, 1994 WL 326001, *2 (6th Cir. 1994).

The Sixth Circuit's holding in *Conley* was expounded upon in *Pyles v. Raisor*, 60 F.3d 1211 (6th Cir. 1995).  There, the defendant, an enforcement officer with Kentucky's Department of Alcoholic Beverage Control arrested the plaintiff Teresa Pyles for supplying alcohol to a minor.  60 F.3d at 1212.  In response, Pyles filed a § 1983 action. *Id.* at 1214.  By the time trial commenced, Pyles only had one claim left which was the allegation that her arrest was unlawful.  *Id.*  The trial court found no fault with the officer's claim that he had probable cause for the arrest, but the court concluded that the arrest was defective under Kentucky law because the misdemeanor offense was not committed in the officer's presence pursuant to KRS 431.005(1)(d).  *Id.*  The court also found other facts troubling related to the arrest, and ultimately concluded that the arrest violated Kentucky law.  *Id.*

On appeal, the Sixth Circuit reversed the trial court's decision, and entered judgment in favor of the officer.  *Id.* at 1216.  The court held that "Pyle's rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."  *Id.*

The *Conley* court's ruling is instructive here.  There, the enforcement officer had no authority to arrest for a misdemeanor he did not actually observe.  Here, Lt. Burnett did not have permission under Kentucky law to arrest Gregory for the seatbelt violation.

Nevertheless, the teaching of *Conley* instructs courts to disregard requirements under Kentucky law that "are not grounded in the federal Constitution and will not support a 1983 claim."  60 F.3d at 1216.

The provision of the KRS requiring that a violator of the seatbelt laws be given a citation instead of being arrest is not derived from the federal Constitution.  Under Fourth Amendment analysis, the only consideration as it relates to arrest is whether there was probable cause for it.  "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' "  *Pyles*, 60 F.3d at 1215 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  It's been established that Gregory did not have his seatbelt on at the time of the stop resulting in a violation of state law.  Given that Gregory has been unsuccessful in pointing to specific facts to refute this claim, as well as the claim that he was on a public road, summary judgment in favor of Lt. Burnett with respect to Gregory's unlawful arrest claim is appropriate.

**3**

Count 4 of the complaint asserts federal and state claims for malicious prosecution based on the Fourth Amendment.  Four elements compose a malicious prosecution claim:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claims is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.

Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal citations and quotation marks omitted).  There is no argument that this right was not clearly established in 2009.  *E.g.*, *Sykes*, 625 F.3d at 308.  Hence, to overcome Lt. Burnett's qualified immunity defense, Gregory must present sufficient facts to support each of the aforementioned elements.  Gregory has not done so.

In this Circuit, "it [] remains firmly established that where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *McKinley,* 404 F.3d at 444-45 (and cases cited therein).  "Want or lack of probable cause is also a required element of a malicious prosecution claim under Kentucky law." *Id.* at 490; *see Raine v. Drasin,* 621 S.W.2d 895, 899 (Ky.1981) (setting forth elements).  The Court has already determined that Gregory's arrest for violation of the seatbelt laws was supported by probable cause.  Therefore, the implementation of criminal charges against him cannot be considered malicious prosecution under federal or state law.  Therefore, Lt. Burnett is entitled to summary judgment with respect to this issue too.

**4**

Remaining and subject to analysis under the qualified official immunity standard are several state claims for negligence, gross negligence, intentional infliction of emotion distress, and negligent infliction of emotional distress. [R. 1, at 11-14.]

As to both Counts 5 and 6, claims for negligence and gross negligence, respectively, Gregory asserts "Officer Lt. Burnett acted unreasonably and breached his duty when retaliated against [him], falsely arrested [him], and maliciously prosecuted [him] without probable cause."  [R. 1, at 11, 12.]  Gregory's claims rely on a faulty

premise, that Lt. Burnett breached his duty of care by subjecting him to unlawful and unconstitutional conduct.  Nevertheless, this Court has determined that Lt. Burnett's conduct was neither unlawful nor unconstitutional because he had probable cause to arrest Gregory.  Therefore, his negligence claims cannot persist and summary judgment will be entered against these claims.

Gregory's claims for intentional and negligent infliction of emotional distress must fail too.  Under Kentucky law, Greogry is precluded from recovering under a separate claim of intentional infliction of emotional distress because, in theory, he can pursue damages for mental distress under his negligence claim.  *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky.Ct.App. 1993) ("where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.").  Furthermore**,** a claim for negligent infliction of emotional distress cannot persist either because, as explained earlier, Lt. Burnett was not negligent in arresting where there was probable cause for Gregory's arrest.

### III

To review, Gregory asserted eight causes of action in his complaint.  Counts 1 through 4 included claims for First Amendment retaliation, unlawful stop, unlawful arrest and malicious prosecution pursuant to § 1983 and in violation of the First and Fourth Amendments.  Counts 5 through 7 allege state law claims for negligence, gross negligence, and negligent infliction of emotional distress.  Counts 8 and 9 allege claims

based on state law for intentional infliction of emotional distress and malicious prosecution. [*Id.*]

Lt. Burnett is entitled to summary judgment on all of Gregory's claims. The Court, under the qualified immunity framework, found that Lt. Burnett had reasonable suspicion to stop Gregory and had probable cause to effectuate a custodial arrest because Gregory was not wearing his seatbelt, while operating a motor vehicle on a public road. The malicious prosecution and retaliatory arrest claims must fail too because Lt. Burnett had probable cause to justify his conduct. Specifically, with respect to the retaliatory arrest claim, the Supreme Court in *Howards* explained that it had never held that an arrest supported by probable cause could violate the First Amendment. Therefore, it would not have been clearly established at the time Lt. Burnett arrested Gregory that such a claim was possible, and consequently, Lt. Burnett is entitled to qualified immunity protection.

The claims for negligence, gross negligence, and negligent infliction of emotional distress fail because Lt. Burnett's conduct was in no way negligent. The state malicious prosecution claim suffers from the same deficiency as the federal claim; Lt. Burnett had probable cause for the arrest. Finally, Gregory cannot persist with his intentional infliction of emotional distress claim because under traditional tort principles he could, presumably, recover for emotional distress.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Lt. Burnett's Motion for Summary Judgment [R. 20, R. 38] is **GRANTED;**

   (2)  Summary Judgment is entered in favor of Lt. Burnett and against Gregory; and

   (3)  A judgment will be filed contemporaneously with this Memorandum Opinion and Order.

   This 29th day of March, 2013.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**